## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON BRICKNER, | CASE NO. 3:14-cv-02462-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | **MEMORANDUM** |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 9, 10, 11, 12 |

## MEMORANDUM

### I.    Procedural Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Sharon Brickner ("Plaintiff") for benefits under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations").

On March 20, 2013, Plaintiff applied for benefits under the Act. (Tr. 147-50). On May 6, 2013, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 60-68), and Plaintiff requested a hearing. (Tr. 77-

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

78). On July 1, 2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 39-59).   August 7, 2014, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 17-33). Plaintiff requested review with the Appeals Council (Tr. 14-16), which the Appeals Council denied on November 10, 2014, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On December 23, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On April 8, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On May 13, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 12). On June 8, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). Plaintiff did not file a reply. On December 23, 2015, the parties consented to the adjudication of this case by the undersigned. (Doc. 12). The matter is now ripe for review.

## II.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d

1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.   Relevant Facts in the Record

Plaintiff stopped working in October of 2012. (Tr. 169). Plaintiff asserts onset in January of 2013, when she first began to experience chest pain. (Tr. 293). Plaintiff reported significant symptomology for about nine months after her onset date and underwent multiple procedures. (Tr. 316, 324, 347, 353, 360-72, 379, 384, 398, 410-13, 416-19, 446-57, 508-09, 513-22). She applied for benefits under the Act in March of 2013. (Tr. 311). She submitted a function report indicating pain,

dizziness, light headedness, and blurred vision, along with problems sitting, standing, walking, and performing postural movements. (Tr. 187-96).

On May 6, 2013, during Plaintiff's period of significant symptomology, state agency physician Dr. Elizabeth Kamenar, M.D., reviewed Plaintiff's file and authored an opinion. (Tr. 65). She opined that Plaintiff remained capable of performing a range of sedentary work. (Tr. 64).

Plaintiff also underwent surgery in her right leg. (Tr. 395). By August 14, 2013, Dr. William Bachinsky, M.D. noted that:

> Since our right lower extremity arterial intervention, patient notes marked improvement in her right leg symptomatology. She notes no major episodes of chest pain, shortness of breath, or other cardiac, pulmonary, or peripheral vascular symptomatology. The patient denies any bleeding issues on antiplatelet therapy.

(Tr. 395). Plaintiff's distal pulses were reduced, and her examination was otherwise normal. (Tr. 396).

On September 3, 2013, Plaintiff underwent heart surgery with Dr. Mubashir Mumtaz, M.D. (Tr. 353, 500-05). On September 8, 2013, Dr. Todd Bokelman, M.D., wrote "In Hbg Hospital for CABG 9/3/13 (LIMA-LAD, SVG-D, SVG-RCA), EF normal. Low BP limited meds. No significant arrhythmias. Cardiac meds updated in Medent. She has now quit smoking. Interested in cardiac rehab." (Tr. 512).  On September, 30, 2013, Plaintiff followed-up in Dr. Skotnicki's and

Dr. Bachinsky's office. (Tr. 403). Physical examination was normal. (Tr. 402).

Notes indicate:

> This is a routine hospital followup after her recent open heart surgery as outlined below. She has lost approximately 20 pounds. She quit smoking. She is walking 30-60 minutes daily most days of the week. Her blood sugars have come under excellent control with the current insulin regimen. She denies chest pain, shortness of breath, palpitations or syncope. She denies any leg claudication symptoms.
> …
> She is one month after off pump CABG X 3. LVEF is normal. She is clinically stable with no symptoms of angina. She is exercising regularly walking for 30 to 60 minutes daily with no symptoms of angina. She has intermittent dyspnea related to previous smoking history. She has quit smoking. She is doing great. Blood pressure is controlled. EKG in office revealed NSR with new nonspecific anterior lateral t wave changes. She will have a limited echocardiogram to assess LVEF. An Ekg will be repeated with echocardiogram.
> (Tr. 402-03). Plaintiff was instructed to follow-up in three months. (Tr. 403). Echocardiogram was "essentially normal" with an ejection fraction of 65%.

(Tr. 510).

On October 3, 2013, Plaintiff reported to Dr. Little that she "feels well" with "no angina" and only "slight rib pain" from her recent surgery. (Tr. 329). She denied shortness of breath. (Tr. 329). This record mentions no other complaints. (Tr. 329). Examination was normal, with "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection." (Tr. 329). Plaintiff demonstrated "the appropriate mood and affect." (Tr. 325). On October 18, 2013, Plaintiff was discharged from Pinnacle Health Cardiovascular. (Tr. 442).

On November 25, 2013, Plaintiff reported back pain that was "worsening" over the previous two months. (Tr. 331). She reported that her symptoms were aggravated by "standing" and "relieved by over the counter medication: naproxen and warm bath." (Tr. 331). She reported "mild" numbness in her bilateral hands that began "2 weeks ago." (Tr. 331). She denied confusion, dizziness, fever, hallucinations, headache, motor weakness, personality changes, tingling, and vertigo. (Tr. 331). Examination indicated tenderness, but normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. (Tr. 332). She demonstrated "the appropriate mood and affect." (Tr. 332).

On December 19, 2013, Dr. Little noted:

> Back pain. Onset: 2 Months Ago. The problem is stable. It occurs persistently. Location of pain was lower back. Pain has radiated to the L shoulder. The patient describes the pain as throbbing. The patient denies aggravating factors. Symptoms are relieved by pain meds/drugs. x ray in past showed only osteoporosis and mild arthritis. I told her that she should have pt to see if she can treat her back pain without narcotics. She agreed. 2. abdominal pain bloating after eating home glucose good, she says. ambien not working will try Trazadone.

(Tr. 334). Examination was normal, with "normal range of motion, muscle strength, and stability in all extremities with no pain on inspection." (Tr. 335). Plaintiff demonstrated "the appropriate mood and affect." (Tr. 335). This record contains no mention of numbness. (Tr. 334-35).

On February 18, 2014, an ultrasound of Plaintiff's lower extremities indicated:

Interpretation Summary 1. Mildly elevated velocities noted in the proximal common femoral arteries bilaterally. 2. Somewhat reduced velocities noted throughout the remaining arterial segments of the right lower extremity. 3. Unable to identify the distal right peroneal artery. 4. The right anklelbrachial index is 0.86 and the left ankle/brachial index is 1.03. The right ABI has increased since the pre-procedure report of 7/13 (previous right ABI = 0.53).

(Tr. 414).

On February 26, 2014, Dr. Robert Skotnicki, D.O. noted Plaintiff's "symptoms of lower extremity discomfort with ambulation" and "exertional activity." (Tr. 406). Physical examination was normal. (Tr. 405, 444). Dr. Skotnicki prescribed Pletal to address her symptoms of claudication and ordered additional laboratory studies. (Tr. 405).

On April 2, 2014, Dr. Chang noted that Plaintiff's angina had "resolved" since bypass surgery. (Tr. 407, 446). Plaintiff reported "increasing coolness and discomfort of her right leg." (Tr. 407). Physical examination was normal. (Tr. 408). Plaintiff was "trying to stop smoking." (Tr. 408). Dr. Chang indicated that, "[g]iven her abnormal arterial duplex and clinical symptoms of probable restenosis, I asked her to undergo repeat right lower extremity angiography angiography of the iliac arteries with possible intervention." (Tr. 408).

On April 17, 2014, cardiac catheterization indicated:
Mild to moderate atheromatous disease of the distal abdominal aorta. 2. Severe stenosis of the proximal right common iliac artery, just proximal to previously deployed stent. 3. Patent right common femoral artery stent, moderate-to-severe stenosis involving the left common femoral artery. 4. No major infra-inguinal disease noted.

(Tr. 350).

> The details of her angiogram are outlined in the report. In short, the patient was found to have a new severe stenosis involving the proximal right common iliac artery with patent iliac and common femoral artery stents on the right. On the left, there did appear to be a moderate-to-severe stenosis involving the left common femoral artery which was at the sheath insertion site. Therefore, intervention was not performed at this time. Our plan is to bring the patient back in 1 to 2 weeks for access of the right brachial artery in order to access the right iliac artery lesion and possibly the left common femoral artery lesion, if needed. We have asked the patient remain on her same medications including aspirin and Plavix.

(Tr. 351).

On  April 29, 2014, Dr. Chang performed another procedure. (Tr. 423). She was instructed not to drive or lift more than ten pounds for "1 week." (Tr. 374). She was not instructed to climb stairs slowly. (Tr. 374). She was instructed to follow-up with Dr. Chang in June of 2014. (Tr. 374). There is no evidence of any follow-up with Dr. Chang prior to the ALJ decision in August of 2014. (Tr. 29).

On May 1, 2014, Plaintiff submitted a letter that she was having financial difficulties and was unable to work because of "all the pain," and would have "chest pains for the rest of her life." (Tr. 215). In May of 2014, Dr. Little noted Plaintiff's report of "mood swings" that had worsened "in the last couple months, since her girl friend's death...more depressed in spite of Sertraline 100 mg daily." (Tr. 524).  Plaintiff had "normal range of motion, muscle strength and stability in all extremities with no pain on inspection." (Tr. 524). Dr. Little switched

venlaxafine for sertraline and prescribed Chantix. (Tr. 525). This record contains no mention of back pain or chest pain, Plaintiff's cardiovascular examination was normal, and her musculoskeletal examination indicated "normal range of motion, muscle strength and stability in all extremities with no pain." (Tr. 524). There is no evidence of any medical treatment prior to the ALJ decision in August of 2014. (Tr. 29).

On July 1, 2014, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 40). She testified to chest pains that she would "have for the rest of [her] life" that occurred "everyday." (Tr. 44). She testified to "a lot of pain" in her legs and that she could not walk "too far." (Tr. 44). She reported that some days she "just stayed in bed all day." (Tr. 44). She testified that her physicians "didn't order" physical therapy because they "didn't think [she] could do it." (Tr. 46). She testified to "a lot of crying" from depression. (Tr. 46). She testified to problems driving because she would be "so light-headed and dizzy all the time I get confused" and had problems with her short-term memory. (Tr. 48, 51, 53). She testified that she became short of breath and experienced chest pains when she climbed stairs. (Tr. 50) She testified that she had to take naps during the day and experienced numbness in her bilateral feet. (Tr. 52-53).

## IV.   Plaintiff Allegations of Error

### A.   Sentence Six and Medical Opinions

Plaintiff submitted a medical opinion from Dr. Little after the ALJ reached the decision. (Tr. 6, 537-43). The Court did not consider this opinion. The Third Circuit has repeatedly held that medical opinions may not be submitted after the ALJ reaches a decision if the opinion could have been obtained prior to the decision. Here, Plaintiff had been treating with Dr. Little for years. Doc. 10. Any medical opinion from Dr. Little could have been obtained prior to the decision. Doc. 10. The Third Circuit has explained:

> We have previously held that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir.1991) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963)). No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review. No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ. Instead, the Act gives the district court authority to remand the case to the Commissioner, but only if the claimant has shown good cause why such new and material evidence was not presented to the ALJ.
> …
> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining

> another bite of the apple if the Secretary decides that the claimant is
> not disabled.") (quotation omitted); *Wilkins*, 953 F.2d at 97
> (Chapman, J., dissenting) ("By allowing the proceedings to be
> reopened and remanded for additional evidence, ... the majority is
> encouraging attorneys to hold back evidence and then seek remand for
> consideration of evidence that was available at the time of the ALJ
> hearing."). Instead, we believe that it is a much sounder policy to
> require claimants to present all material evidence to the ALJ and
> prohibit judicial review of new evidence unless there is good reason
> for not having brought it before the ALJ. Such a holding is
> instrumental to the speedy and orderly disposition of Social Security
> claims.

*Matthews v. Apfel*, 239 F.3d 589, 594-95 (3d Cir. 2001).

This case is very similar to *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011). In *Chandler*, the claimant submitted the only treating source medical opinions after the ALJ decision. *Id.* The Third Circuit held that "remand based on new evidence is only appropriate where the claimant shows good cause why that evidence was not procured or presented before the ALJ's decision, and Chandler has failed to do so here because she has not explained 'why she did not attempt to obtain [the] evaluation[s] at a time when [they] could be considered by the ALJ.'" *Id.* (quoting *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir.2001).

In *Chandler*, like here, the only medical opinion in the record was from a non-treating, non-examining source who opined that the claimant was not disabled. *Id.* at 361-63. Pursuant to *Chandler*, the ALJ was entitled to rely on Dr. Kamenar's opinion that Plaintiff could perform a range of sedentary work. (Tr. 64-65). Moreover, the Court notes that Dr. Kamenar's opinion was authored during

Plaintiff's period of worst symptomatology. After she underwent heart surgery in September of 2013, less than nine months after her alleged onset date, Plaintiff's symptoms largely resolved. She mentioned bilateral hand numbness for two weeks in November of 2013, but not thereafter. (Tr. 331, 334, 524). She reported two months of back pain in November and December of 2013, but not thereafter. *Id.* She reported a few months of right leg pain from February to April of 2014, but does not explain how this would preclude her from performing sedentary work. (Tr. 350, 406, 414).   She reported depression once, in May of 2014. (Tr. 524). Consequently, the treatment record suggests that Plaintiff did not meet the duration requirement of the Act, even if she was disabled from heart problems prior to her surgery, and is consistent with Dr. Kamenar's opinion. *Supra.*

Substantial evidence supports the ALJ's assignment of weight to the medical opinions and reliance on Dr. Kamenar's opinion.

## B.    Credibility

Plaintiff asserts that the ALJ erred in assessing her credibility. Plaintiff asserts that the ALJ "failed to consider how the side effects of Ms. Bricker's medication" would bolster her credibility. (Pl. Brief at 6). Plaintiff asserts that the ALJ "failed to consider" various other evidence. (Pl. Brief at 6). Similarly, Plaintiff asserts that the ALJ failed to consider that "Dr. Little also noted bilateral hand numbness, feelings of being off balance, feelings of burning extremities,

concentration difficulties, foot ulcers and slow healing wounds and sores, yet these factors were not given sufficient weight. (R. 312-338)." (Pl. Brief at 10).

Different types of evidence require different levels of evaluation. Whether the ALJ properly evaluated a particular piece of evidence depends on a number of factors, including its substance; its source; and whether it is medical, non-medical, or medical opinion evidence. The ALJ must consider all of the evidence. *See* 20 C.F.R. §404.1512. However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") *quoting Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). Thus, the ALJ does not need to cite evidence in the decision if the ALJ is only required to consider it. *Id.*; *see also Hur v. Comm'r Soc Sec.*, 94 F. App'x130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record").

Plaintiff asserts "the ALJ specifically established that Ms. Brickner's impairments could reasonably be expected to cause the alleged symptoms. Therefore, the ALJ lacked a reasonable basis for determining that Ms. Brickner was not disabled." (Pl. Brief at 4). However, this simply reflects the two-step credibility assessment. When making a credibility finding, "the adjudicator must

consider whether there is an underlying medically determinable physical or mental

impairment(s)…that could reasonably be expected to produce the individual's pain

or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting
> effects of the individual's symptoms to determine the extent to which
> the symptoms limit the individual's ability to do basic work activities.
> For this purpose, whenever the individual's statements about the
> intensity, persistence, or functionally limiting effects of pain or other
> symptoms are not substantiated by objective medical evidence, the
> adjudicator must make a finding on the credibility of the individual's
> statements based on a consideration of the entire case record.

SSR 96-7P. The Third Circuit explained in *Mason v. Shalala*, 994 F.2d 1058 (3d

Cir. 1993):

> An ALJ must give serious consideration to a claimant's subjective
> complaints of pain, even where those complaints are not supported by
> objective evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d
> Cir.1985). "While there must be objective evidence of some condition
> that could reasonably produce pain, there need not be objective
> evidence of the pain itself." *Green*, 749 F.2d at 1071. Where medical
> evidence does support a claimant's complaints of pain, the complaints
> should then be given "great weight" and may not be disregarded
> unless there exists contrary medical evidence. *Carter*, 834 F.2d at 65;
> *Ferguson*, 765 F.2d at 37.

*Id.* at 1067-68.

Plaintiff asserts that the ALJ "glosses over Ms. Brickner's testimony that she

has to nap two hours per day every day and also stays in bed all day for several

days a week" (Pl. Brief at 5). Plaintiff asserts that "[t]he ALJ found Ms. Brickner's

testimony unpersuasive without explanation." (Pl. Brief at 5).

However, the ALJ provided extensive explanation for the credibility assessment. The ALJ noted that, although Plaintiff "testified that she has chest pain every day, Dr. Chang stated on April 2, 2014 that the claimant's [chest pain] had resolved" and that records from September of 2013 indicated that she was exercising with "no symptoms of [chest pain]." (Tr. 26). This inconsistency is a proper reason to reject Plaintiff's credibility. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P. The ALJ also noted that Plaintiff's physical and mental examinations were typically normal, with regard to neuropathy, musculoskeletal impairments, and depression. (Tr. 26-27). The ALJ similarly noted that Plaintiff testifimony was contradicted by "records from Pinnacle Health Cardiology reveal[ing] that the claimant denied shortness of breath, chest pain, peripheral neuropathy, and leg claudication symptoms." (Tr. 27). The ALJ also relied on Dr. Kamenar's uncontradicted medical opinion. (Tr. 27). These are all appropriate and proper reasons to discount Plaintiff's credibility. *See Seever v. Barnhart*, 188 F. App'x 747, 754 (10th Cir. 2006) (We will not fault the ALJ for failing to interpret [Plaintiff's] symptoms and test results differently than [a medical expert]") (citing *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir.1996)).

Plaintiff asserts that "[t]he side effects and pain . . . makes her testimony regarding the need for substantial rest persuasive." (Pl. Brief at 6). Plaintiff asserts that her "pain and need for substantial rest support her claim." (Pl. Brief at 6). This is a circular argument.  Plaintiff's self-reported side effects, pain, and need for rest are evidenced only by her subjective complaints, which the ALJ found to be less than fully credible. *Supra.*

Plaintiff asserts that "numerous records" exist that demonstrate Plaintiff's "inability to perform sedentary work due to the pain she experiences from physical exertion, sitting, standing, or walking for extended periods." (Pl. Brief at 7). Plaintiff asserts that, although some records in October and September of 2013 show that she denied symptoms, other records in July of 2013, February of 2014, and April of 2014 show that she reported symptoms. (Compare Tr. 329, 331, 334, 401 with 398, 404, 407). Plaintiff asserts that "although some reports show marginal improvements, they contradict the overall body of substantial medical evidence." (Pl. Brief at 4). However, the question is not whether numerous records support Plaintiff's proposed interpretation. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation omitted). The question is whether substantial evidence, which is less than a preponderance, supports the ALJ's interpretation. *Id.*

This case is like *Chandler*, as discussed above. *Supra.* This case is also like *Burns v. Barnhart*, 312 F.3d 113 (3d Cir. 2002), where the Third Circuit explained:

Burns does not point to any relevant medical opinion that supports his allegations that his pain and exertional limitations are more severe than the ALJ found them to be. *Cf. Cotter*, 642 F.2d at 706–07 (remanding to the ALJ to reconsider a denial of disability benefits because the ALJ's opinion did not address contradictory medical evidence). Instead, he notes only his testimony before the ALJ. As for pain, Burns did testify to experiencing various forms of pain, and the ALJ clearly addressed that testimony and did not reject Burns' allegations completely. As already mentioned, the ALJ found that Burns did suffer from chronic back pain. Nevertheless, the ALJ noted that other parts of Burns' testimony, namely those addressing the number and type of activities he engages in on a daily basis, seemed to belie his assertion that the pain is disabling. *130 In fact, as the ALJ noted, Burns specifically stated that he does not experience pain when he plays the drums. Likewise, Burns' testimony regarding his limitations does not seem consistent with other parts of his testimony. While he testified that he can only lift one pound and could not work an eight-hour day, he admittedly engages in activities—most obviously, taking care of his four dogs and playing drums—that require him to be able to lift more than a pound and to exert at least some effort.[12] With this contradictory testimony and the lack of significant medical evidence or a medical opinion fully supporting his subjective assessment of his limitations or complaints of pain, *cf. Mason*, 994 F.2d at 1067–68 ("Where medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence."), we cannot say that substantial evidence did not support the ALJ's ruling or his rejection of parts of Burns' testimony as not fully credible. *Cf. Van Horn v. Schweiker*, 717 F.2d 871, 873–74 (3d Cir.1983) (stating that an ALJ should note in his decision when he did not find a witness credible).

*Id.*, 129-30.

"Neither the district court nor the Court of Appeals is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d

1002, 1007 (3d Cir.1984)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir.2011) ("Courts are not permitted to re-weigh  the evidence or impose their own factual determinations") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is entitled to deference with regard to credibility determinations. *See  Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)). Plaintiff must demonstrate that no reasonable mind would accept the evidence cited by the ALJ to conclude that she was not fully credible. *See Richardson v. Perales*, 402 U.S. at 401 (1971). The Court would "refus[e] to direct a verdict" in Plaintiff's favor if this were a jury trial. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation omitted). Substantial evidence supports the RFC and denial of benefits. *Id.*

## V.    Conclusion

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.*

(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, a reasonable mind might have denied Plaintiff benefits. The Court would refuse to direct a verdict in Plaintiff's favor if this was a jury trial. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 31, 2016               _____s/Gerald B. Cohn_____
                                    GERALD B. COHN
                                    UNITED STATES MAGISTRATE JUDGE